## THE NARBO.

### No. 1000.

District Court, E. D. South Carolina.

Feb. 8, 1937.

Stoney, Crosland & Pritchard, of Charleston, S. C., for libelants.

Huger, Wilbur, Miller & Mouzon, of Charleston, S. C., for respondent.

MYERS, District Judge.

Libelant seamen, having left the steamship Narbo in the port of Charleston on the 10th day of December, 1936, filed their claim for balance of wages due them for alleged failure by the master to comply with the requirements of section 673, title 46, U.S.C.A., admitting that the port of Charleston was not the port of final discharge contemplated in the articles signed by them. The allegation and basis of claim is that the boatswain was not assigned to one of the three watches provided for in said section, and that, because of the failure to so assign said boatswain, libelants were entitled to receive wages earned in full. There is some conflict of testimony as to whether any notice was given and demand for wages made on the grounds alleged. This is not material. The Narbo arrived at Charleston on the morning of Sunday, December 6, 1936, at 7:30 o'clock, and the seamen were not called on for further work during that day. The officers of the ship state that, when the crew was called on for work Monday morning, they refused to comply with orders, stating that there was a seamen's strike on; and they remained on the ship, still refusing to work, until Thursday, December 10, 1936. If there was a failure on the part of the master to meet the requirements of section 673, the seamen were entitled to discharge with full wages at their option, and were not required to give notice at the time of leaving that they were leaving the vessel because of failure to comply with the section under consideration.

It is conceded that the boatswain was not assigned to one of the regular consecutive watches at the time of sailing or thereafter. Libelants insist that the boatswain, having an AB rating, should have been so assigned; the act providing that "the sailors shall, while at sea, be divided into at least two, and the firemen, oilers, and water tenders into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel."

In O'Hara et al. v. Luckenbach S. S. Co., 269 U.S. 364, 367, 46 S.Ct. 157, 158, 70 L.Ed. 313, the court said: "The general purpose of the Seamen's Act is not only to safeguard the welfare of the seamen as workmen, but, as set forth in the title, also 'to promote safety at sea.' The act as a whole shows very clearly that, while hours of work and proper periods of rest were regarded as considerations of primary concern while the vessel is in a safe harbor, these considerations must yield, as they have always yielded, to the paramount necessity of safety while the ship is at sea; and, as indicating that the provision under review was not intended primarily as a regulation of working hours, it is significant that it does not apply to the entire crew, but requires a division into watches only of the sailors and the firemen, oilers, and water tenders. It is natural to suppose that, if the purpose of Congress was chiefly to regulate hours of work, something would have been said about the service, while at sea, of those employed in the steward's department as well. And not only is the division confined to those of the crew engaged in the mechanics of conducting the ship on her voyage, but the imperative requirement is that the watches into which they are divided 'shall be kept on duty successively'; that is to say, by turns, so that one watch must come on as another goes off. The evident purpose was to compel a division of the men for duty on deck and in the fireroom, and continuity of service, to the end that in those departments the ship should at all times be actively manned with equal efficiency."

The undisputed testimony is to the effect that, when an able-bodied seaman ships as boatswain, he is customarily as-

signed to special duties in the supervision of deck work and ship maintenance, which is, as a practical matter and of necessity, performed during the daylight hours assigned to the boatswain, 8 a. m. to 4 p. m. While he is a member of the crew, the court is of the opinion that a failure to assign the boatswain to one of the consecutive watches did not jeopardize either the welfare of the seamen as workmen nor the safety of the vessel at sea; nor did his assignment to the customary duties of a boatswain interfere with the evident purpose of the act in active management and equal efficiency, or continuity of service. I am further of the opinion that the mere fact that the boatswain had an AB rating did not bring him within the mandatory requirements for division of "sailors" into watches as set out in the act.

I am therefore of the opinion that the libel should be, and the same hereby is, dismissed.