## THE YOUNGSTOWN.

### MADDEN et al. v. LYKES BROS. RIPLEY S. S. CO., Inc.
### No. 269.

District Court, E. D. Louisiana.
July 10, 1939.

Richard A. Dowling, of New Orleans, La., for libelants.

Terriberry, Young, Rault & Carroll and Benjamin W. Yancey, all of New Orleans, La., for respondent.

BORAH, District Judge.

This is a libel by former members of the crew of the steamship Youngstown, seeking to recover the balance of earned wages which it is claimed was due them on December 17, 1936, when they left the vessel's service at Port Tampa.

The material facts are these. On October 16, 1936 the libelants signed the usual form of shipping articles before the United States Shipping Commissioner for the port of Houston, Texas, which articles provided in part as follows: "It Is Agreed between the Master and seamen, or mariners, of the S. S. Youngstown of Houston, Texas, of which Albin Johnson is at present Master, or whoever shall go for Master, now bound from the Port of Houston, Texas, to Havre, Dunkirk, Antwerp, & Rotterdam and such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding 12 calendar months."

On October 17, 1936 the vessel proceeded on her transatlantic voyage and after calling at foreign ports returned to the United States, arriving at Port Tampa, Florida, on December 17, 1936. When the vessel arrived at Tampa a seamen's strike was in progress and the libelants informed the chief officer that they could not go to work until they had more definite information about the strike. On the following day after delegates from the crew had twice conferred with the master and after the ship's agent and the Union delegate had been called in, in an effort to adjust the matter, libelants decided to go on strike and to quit the service of the vessel. However, before actually quitting the vessel they demanded and were paid one-half of their earned wages including overtime. Having left the ship solely on account of the strike, the master logged them as deserters and declared all of their unpaid wages forfeited. After several days delay a new crew was employed for the remainder of the voyage and the vessel proceeded to New Orleans, the port of final discharge where the voyage terminated on December 24, 1936.

In this libel the seamen are seeking to recover the unpaid balance of wages which have already been forfeited with the approval of the United States Shipping Commissioner at New Orleans. They also seek to recover two days' pay for each day delay in the payment of their respective wages. 46 U.S.C.A. § 596. The allegations of the libel show that this proceeding was instituted on the theory that libelants were not in fact deserters and that the shipping articles should be construed to mean that libelants were only obligated to work on board the vessel until such time as the vessel returned to an American port in the Gulf of Mexico or to a safe harbor in an American port. Testimony was taken on these issues and the case was set down for trial. When the case was argued for libelants, new issues were injected into the case and libelants' proctor requested and was granted time to take further evidence. The nature of this evidence will be adverted to after stating the issues.

Libelants have not amended their pleadings but as I understand the situation they now claim that the ship violated 46 U.S.C.A. § 673, in that (1) the members of the crew were required to work overtime and (2) the watches were broken. They con-

tend that these alleged violations of the law entitle them to their discharge and to their earned wages; and accordingly, they could not be classed as deserters.

The evidence which was taken on the new issues is all one way and to the effect that no members of the crew performed any work outside their regular hours except voluntarily and by consent. In fact there was in force during the period in question a contract between the owners of this ship and the union to which the libelants were members; and this contract specifically provided for overtime and how that overtime should be recompensed.

The only alleged breaking of watches in this case is that of Madden, an oiler. The creditable evidence shows that there were two other oilers on the articles in addition to Madden and that in accordance with the governing statute the sea watches were divided among these three so that each served four hours and then had eight hours off. For a period of thirteen or fourteen days Madden was taken off these watches to do machinist's work on the winches. This is work which is sometimes done by the deck engineer, but this vessel did not carry a deck engineer and there is no showing that she was required to do so. On the days Madden was doing this machinist's work his hours were from 8 to 12 and from 1 to 5, and his place as oiler in the engine room was taken by Kreger, the cadet.

Libelants rest their case principally on the rule announced in Weisthoff et al. v. American-Hawaiian S. S. Co., 2 Cir., 79 F.2d 124, wherein it was held that seamen were entitled to their discharge and to be paid their wages earned if during the voyage watches were broken and the men required to work overtime contrary to 46 U.S.C.A. § 673; and libelants claim that this is true even though at the time the seamen did not assign such violation as their reason for leaving the ship. The Weisthoff decision is unquestionably sound; however, there was no such violation of the statute in the instant case. This statute, 46 U.S.C.A. § 673, was originally enacted in 1915 and was first amended in June, 1936; however this statute as amended did not become effective until six months after June 25, 1936, consequently this amendment has no application here. Nor has the amendment of June, 1938. Therefore, the rights and liabilities of the parties are governed by the statute as it stood prior to the amendments. A reading of that statute reveals that there is nothing in its language prohibiting or impairing the liberty of contract between the master and his crew for the working of voluntary overtime. And since the evidence here shows that such overtime as was worked was worked voluntarily the Court finds no difficulty in reaching the conclusion that the vessel did not violate the statute by agreeing to pay the seamen for voluntary overtime. With reference to the breaking of watches the Court concludes that the failure to assign Madden to one of the consecutive watches and requiring him to do "day work" did not violate the statute. The Narbo, D.C., 17 F.Supp. 991. The Court further concludes that the master was justified in refusing to pay libelants their full wages and that the claim which is presented for double wages under 46 U.S.C.A. § 596 is without merit.

A decree may accordingly be entered dismissing the libel with costs.